UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Asset Marketing Services, LLC, | Case No.: _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Anthony G. LaBarbera, Shant Norsigian, and RSN, P.A., | **(Jury Trial Demanded)** |
| Defendants. | |

COMES NOW Plaintiff Asset Marketing Services, LLC ("AMS") and as for its Complaint against Anthony G. LaBarbera, Shant Norsigian, and RSN P.A. states and alleges as follows:

## PARTIES

1. AMS is a limited liability company organized and existing under, and pursuant to, the laws of the State of Delaware with its principal place of business at 14101 Southcross Drive West, Burnsville, Minnesota 55337.

2. LaBarbera is an individual who, upon information and belief, resides in Vienna, Virginia.

3. Norsigian is an individual who, upon information and belief, resides in Miami, Florida.

4. RSN, P.A. is an entity, type unknown, which, upon information and belief, is organized and existing under, and pursuant to, the laws of the State of Florida with its principal place of business in Miami, Florida.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

6. This Court has personal jurisdiction over LaBarbera because, among other things, LaBarbera has transacted business in the State of Minnesota with Plaintiff in this judicial district, has agreed to Plaintiff's terms and conditions of sale, which include a choice of forum clause granting exclusive jurisdiction of disputes to the Minnesota courts, and has committed tortious acts whose impact was directed to Plaintiff in the State of Minnesota within this judicial district.

7. This Court has personal jurisdiction over Norsigian and RSN, P.A. because, among other things, they have transacted business in the State of Minnesota with Plaintiff in this judicial district, and have committed tortious acts within this judicial district whose impact was directed to Plaintiff in the State of Minnesota within this judicial district.

8. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because, among other things, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## JURY DEMAND

9. Plaintiff respectfully demands a jury for all issues so triable.

## BACKGROUND AND FACTS

10. AMS was founded in 1984 and is a leading multichannel direct marketer of high-value coins and proprietary branded jewelry, watches and other products.

11. Over a period of approximately four years ending in 2013, LaBarbera purchased coins from Plaintiff in multiple transactions, totaling in excess of $430,000. The coins LaBarbera purchased included a number of so-called "error" coins manufactured by the U.S. Mint, each of which was in some way incorrectly struck. For example, LaBarbera purchased five specimens of a John Adams Presidential Dollar, which did not contain the typical "E Pluribus Unum" lettering around their edges. These were considered, at the time, valuable collector coins.

12. On or about May 24, 2013, Plaintiff received a letter from Norsigian and RSN, P.A., stating that they had been retained as attorneys for LaBarbera, and demanding a full refund on all of LaBarbera's purchases from Plaintiff. Plaintiff responded to the letter declining to make a refund and inviting further discussions.

13. The parties, through counsel, continued discussions over a several-month period. At no time did LaBarbera, Norsigian, or RSN demand more than a refund of his original purchase price for the coins.

14. On or about January 26, 2014, Norsigian and RSN emailed Plaintiff's counsel threatening complaints to the Minnesota Attorney General, and a publication in which Plaintiff advertises, if Plaintiff did not give LaBarbera a full refund on the coins.

15. Norsigian and RSN's January 26 email contained a spreadsheet attachment with three columns, one purporting to indicate the price LaBarbera paid for coins, the

3

second a "per coin" valuation by an appraiser, and the third what the appraiser calculated was Plaintiff's "markup" on the coins. The purported "markups" were highest for the so-called "error" coins, such as the Adams coins described above.

16. Counsel for Plaintiff responded to Norsigian and RSN's email on February 3, 2014, offering to rescind the sales of the "error" coins in exchange for a release of all claims with respect to the parties' relationship.

17. Norsigian and RSN replied the same day asking for a more detailed settlement offer.

18. On or about February 10, 2014, Norsigian and RSN again emailed Plaintiff's counsel, stating "You stated that your client offered to rescind sales of the error coins," and requesting a more formal offer.

19. Later on February 10, Plaintiff's counsel emailed Norsigian and RSN as follows: "Thanks for your email. Here's the offer. My client will buy back the following coins for a full refund of $197,197.33, subject to execution of a formal settlement agreement containing the usual terms and conditions and a complete release of all claims." The email then set forth a list of all the "error" coins LaBarbera purchased from Plaintiff.

20. On February 12, Norsigian and RSN emailed Plaintiff's counsel accepting Plaintiff's offer.

21. At the time Plaintiff made the offer, Plaintiff believed that the aggregate purchase price LaBarbera paid for the "error" coins was $197,197.33.

22. Norsigian and RSN drafted a written settlement agreement, which contained a recitation that the coins were in the same condition as when LaBarbera purchased them from Plaintiff for purposes of a refund, and that Plaintiff would be re-purchasing them from LaBarbera for the sum of $197,197.33.

23. After the coins were returned to Plaintiff, and the funds paid to Norsigian through RSN's attorney trust account, Plaintiff realized that $197,197.33 was considerably more than the price LaBarbera had paid for the coins, which was, in fact, closer to $69,497.53.

24. Upon discovery, and only hours after the funds had been wired, Plaintiff's counsel contacted Norsigian and RSN to inform them of the mistake and requesting that the funds remain in Norsigian and RSN's trust account until the actual amounts due for the "buy back" could be verified.

25. Norsigian and RSN refused and, upon information and belief, then disbursed funds to LaBarbera, who will not now return the funds despite the mistake.

## CAUSES OF ACTION

## COUNT I – RESCISSION FOR MUTUAL MISTAKE

26. Plaintiff restates and incorporates each of the preceding allegations herein by reference as if stated fully herein.

27. At no time during the parties' discussions had LaBarbera, Norsigian or RSN demanded, or Plaintiff offered, an amount in excess of LaBarbera's actual purchase prices for the coins.

28. The offer made by Plaintiff, which was accepted by LaBarbera through Norsigian and RSN, was a "buy back" of the error coins "for a full refund".

29. The original purchase price to be refunded by Plaintiff to LaBarbera in exchange for return of the coins was material to the parties' settlement agreement.

30. Upon information and belief, when Plaintiff and Defendants prepared the settlement agreement, they were both mistaken as to how much LaBarbera had originally paid for the "error" coins that were being repurchased.

31. The amount paid by Plaintiff to LaBarbera as a refund was considerably in excess of the actual purchase prices.

32. By virtue of the parties' mutual mistake as to a material fact underlying the settlement agreement, Plaintiff is entitled to rescission of that agreement and return of the funds from Defendants.

## COUNT II – RESCISSION FOR LACK OF MUTUAL ASSENT

33. Plaintiff restates and incorporates each of the preceding allegations herein by reference as if stated fully herein.

34. Plaintiff and LaBarbera had no meeting of the minds regarding the repurchase of the error coins for a sum more than twice their original purchase price, and all offers and acceptances between them referred to the transaction as a "buy back" for a "refund".

35. As the formation of a sales contract requires mutual assent, that mutual assent was lacking in this case, and Plaintiff is entitled to rescission of the parties' settlement agreement and return of the funds from Defendants.

## COUNT III – REFORMATION

36. Plaintiff restates and incorporates each of the preceding allegations herein by reference as if stated fully herein.

37. The parties' intent was for Plaintiff to repurchase the error coins from LaBarbera for their original purchase prices. For the reasons stated above, namely the parties' mutual mistake as to the purchase prices, the settlement agreement contained an incorrect figure for that amount due from Plaintiff to LaBarbera.

38. Plaintiff is entitled to reformation of the settlement agreement to reflect the parties' actual agreement, with the correct original purchase price substituted for the figure in the settlement agreement, and return of the overpayment from Defendants.

## COUNT IV: FRAUD

39. Plaintiff restates and incorporates each of the preceding allegations herein by reference as if stated fully herein.

40. Plaintiff's offer of settlement was to repurchase the error coins at their original purchase price. LaBarbera, through Norsigian and RSN, accepted Plaintiff's offer and at all times understood that Plaintiff intended to pay no more than that amount, merely refunding the purchase price.

41. Norsigian and RSN drafted the settlement agreement document that purported to memorialize the parties' agreement.

42. Upon information and belief, Defendants knew that $197,197.33 was far in excess of what LaBarbera had paid for the coins he was returning to Plaintiff and was not, therefore, merely a refund. Notwithstanding this knowledge, and with full

7

knowledge that Plaintiff was likely to rely upon the amount in the settlement agreement to make payment thereunder, Norsigian and RSN placed that figure into the parties' settlement agreement.

43. Defendants further failed to advise Plaintiff at any time that the $197,197.33 figure was too high, and that by making such a payment Plaintiff was paying LaBarbera far more than the parties had intended or agreed.

44. LaBarbera, as seller of the coins to Plaintiff and for other reasons, was under a duty to make this disclosure to Plaintiff so that, among other things, Plaintiff would not be grossly overcharged for the coins LaBarbera was selling to Plaintiff.

45. Norsigian and RSN, as attorneys with knowledge of the terms under which the parties had agreed to the repurchase and for other reasons, were under a duty to make this disclosure to Plaintiff so that, among other things, Plaintiff would not be grossly overcharged for the coins LaBarbera was selling to Plaintiff.

46. Upon information and belief, Defendants' conduct was intentional and intended to deceive Plaintiff.

47. Norsigian and RSN accepted the excessive payment of $197,197.33 and, upon information and belief, distributed the funds to LaBarbera with knowledge of the over payment.

48. Defendants, when requested by Plaintiff to return the funds paid over and above the original purchase price and intentions of the parties, have refused to do so.

49. As a result of Defendants' fraudulent conduct, Plaintiff was damaged in the amount of $127,699.80.

## COUNT V: UNJUST ENRICHMENT

50. Plaintiff restates and incorporates each of the preceding allegations herein by reference as if stated fully herein.

51. Plaintiff's offer of settlement was to repurchase the error coins at their original purchase price. LaBarbera, through Norsigian and RSN, accepted Plaintiff's offer.

52. The repurchase price actually paid by Plaintiff was $127,699.80 higher than the original purchase price.

53. Norsigian and RSN accepted the payment of $197,197.33 and upon information and belief distributed the funds to LaBarbera. Defendants, when requested by Plaintiff to return the funds paid over and above the original purchase price, have refused to do so.

54. It is inequitable and/or unconscionable for Defendants to enjoy the benefit of the $127,699.80 when the purchase price of the "error" coins was intended by the parties to be, and should have been, $69,497.53.

55. Plaintiff is entitled to have Defendants return $127,699.80 to it.

WHEREFORE, Plaintiff respectfully requests the following relief:

1. An order rescinding the parties' settlement agreement and requiring Defendants to return the sum of $197,197.33 to Plaintiff, with Plaintiff also returning to Defendants the coins it received in exchange for this sum;

2. Alternatively, an order providing for a judgment in the amount of $127,699.80 to be paid by Defendants, jointly and severally, to Plaintiff;

3. Interest as authorized by law;

4. An award of attorney's fees, costs and disbursements; and

5. Such other and further relief as the Court may deem appropriate under the circumstances.

Dated: February 27, 2014

WINTHROP & WEINSTINE, P.A.

s/David A. Davenport
David A. Davenport, I.D. No.: 285109
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Tel: (612) 604-6400
E-Mail: ddavenport@winthrop.com


OF COUNSEL:

LAW OFFICES OF ARMEN VARTIAN
Armen Vartian
1601 N. Sepulveda Blvd #581
Manhattan Beach, CA 90266

*Attorneys for Plaintiff*
*Asset Marketing Services, LLC*

8825935v1